*15 Fed. 174 contra.*

No. 44.—HENRY GARLAND, plaintiff in error, *vs.* THOMAS D. MILLING, executor of David T. Milling, deceased, defendant.

[1.] When the Court below fairly submits the facts in the case, to the consideration of the Jury, and there is no error in law in the charge of the Court, this Court will not disturb the verdict of the Jury.

[2.] The Statute of Limitations does not commence to run against the estate of a deceased testator, until probate of the will and *qualification* of the legal representative of such estate.

Trover, in Upson Superior Court. Tried before Judge FLOYD, October Term, 1848.

On the 6th day of December, 1826, David T. Milling made his last will and testament, which was admitted to probate in the Court of Ordinary of the County of Upson, on the 7th day of September, 1829.

In said will there is this clause : " It is my will and desire, that if my wife should marry another husband, that he shall give security for the performance of this my will."

The testator appointed his wife, Mariah Milling, his executrix, and his sons, John and Thomas Milling, were to join in the executorship, on their arrival at the age of sixteen.

At the September Term, 1829, of the Court of Ordinary of Upson County, Mariah Milling was qualified, and letters testamentary granted her by the Court.

At the November Term of said Court of Ordinary, 1830, it

Garland *vs.* Milling.

was ordered by the Court—" That in compliance with the will of David T. Milling, that Daniel Walker, who had intermarried with Mariah Milling, should give bond in the sum of $8,000, with security, for the execution of the will of the said Milling."

At the September Term of the Court of Ordinary, 1835, the Court granted an order to Daniel Walker, to sell certain tracts of land belonging to the estate of his testator, the said David T. and took a bond, with security, for a true account of the sale of the same, and to pay over the proceeds of the same, to the minors of David T. Milling.

At the May Term, 1843, of the Court of Ordinary of Upson County, the Court passed a *rule nisi,* calling upon Daniel Walker to show cause, at the next term of the Court, why his letters of administration, with the will annexed, on the estate of David T. Milling should not be revoked. 1st. Because his bond could neither be found of record or otherwise. 2d. Because he had made no returns, either of inventory, appraisement or of sale, and that he had wasted and mismanaged the estate.

At the September Term, 1843, of said Court, Walker having made no showing to the *rule nisi,* it was, on motion, ordered that his letters, if any he had, be revoked. On the 3d October, 1843, the Court appointed John J. Cary, administrator *de bonis non,* with the will annexed, of the said David T. Milling. At a subsequent term of the Court, John J. Cary was dismissed and his letters revoked.

At an adjourned term of the Court of Ordinary, held on the 9th February, 1846, Thomas D. Milling, one of the sons mentioned in the appointing clause of the will, was qualified as executor of the will, and letters testamentary granted him by the Court.

The said Thomas D. Milling, as the executor of David T. Milling, deceased, on the 28th July, 1846, commenced an action of trover in Upson Superior Court, against Henry Garland, for the recovery of a negro boy Frank. The defendant filed the general issue, and the Statute of Limitations. At the October Term of Upson Superior Court, 1848, the cause came on to be tried on the appeal, when the plaintiff offered in evidence an exemplification from the Court of Ordinary of said County, containing the will of David T. Milling, deceased, and the actings and doings of the Court of Ordinary of Upson County, as above set forth; also, the letters testamentary granted to the defendant in error; also,

a bill of sale from Robert Pudgen to the plaintiff's testator, for the boy Frank, dated the 24th January, 1826. The defendant admitted that the boy Frank was in the testator's possession when he died, and plaintiff closed his case.

The defendant offered in evidence two bills of sale to the boy Frank—one, dated the 23d February, 1831, from D. Walker, as executor of the estate of D. T. Milling, in right of his wife, to Jonathan Bonner; the other, dated the 3d day of March, 1835, from Jonathan Bonner to the defendant, Henry Garland.

The plaintiff admitted the delivery of the boy Frank, by Walker, to Bonner, and by the latter to Garland, on the 3d of March, 1835, and that he had been in possession of Frank ever since.

The Court charged the Jury on the Statute of Limitations, that Daniel Walker could not be considered the executor of the estate of Milling, until he had given bond in compliance with the provisions of the will, and if the Jury should determine, from the testimony, that he had not given said bond before he sold the negro, that then and in that event the holding of Jonathan Bonner and Henry Garland was not adverse, there being no person in being entitled to sue; and that the Statute of Limitations could not run in favor of said purchasers, unless the Jury should be of opinion that four years had elapsed, from the grant of letters of administration to Cary. And that if the Jury were of opinion, from the evidence, that Daniel Walker had not given the bond provided for by the will, then and in that event, if the Jury should find that four years had not elapsed from the appointment of Cary, as administrator "*de bonis non cum testamento annexo*," to the commencement of said action of trover, that then the Statute of Limitations had not run, and the plaintiff must recover. To both of which said instructions, the defendant, by counsel, excepted, and assigned errors thereon.

Poe & Nisbet, for plaintiff in error.

An executor, unlike an administrator, derives all his power over the estate from the will. 3 *Bac. Ab. Ex'r and Adm'r*, E. 9 *Wendell*, 302, '3, *Valentine vs. Jackson*. 2 *Hill's N. Y. R.* 181, *Babcock vs. Booth.*

An executor may, *before probate*, do almost every thing which he can do afterwards. 3 *Bac. Ab. Ex'r and Adm'r*, E. *Toller*, 46. 1 *Salk.* 306. 1 *Kelly*, 343.

Garland *vs.* Milling.

And he may sue for property of the testator in his own name, which has been taken from him tortiously, without describing himself as executor.  4 *Hill's N. Y. R.* 57.  *Patchen vs. Wilson,* 9 *Wend.* 303.  For this is an act beneficial to the estate.

And he may *sell* and do many other acts before probate.  1 *Kelly,* 343.  *Harper's Const. R.* 6.  *Ibid,* 116.  5 *Cranch,* 358, 361.

And in the Supreme Court of Appeals of Virginia, and that too, under an express Statute, requiring executors, in all cases, to give bond and security, it was held that an executor, before probate, may sue to prevent the Statute of Limitations from running. *Monroe vs. James,* 4 *Munford's R.* 199, *and supra.*

And if before probate, *a fortiori* before giving bond.

2. If the Court should doubt whether Walker could be considered as receiving his appointment of executor from the will, we then refer to the plaintiff in the action, Thomas D. Milling, who was expressly named executor, at the age of 16 years.

Before the Statute of 31st Geo. III. an executor at 17, might take probate and maintain an action as executor.  *Toller,* 443, 445.

This Statute of Geo. III. not being of force in Georgia, the law in this State remains as it was before the enactment of that Statute.  And as it appears from the testimony, that Thomas D. Milling had arrived at the age of 17, more than four years before the institution of his suit, he is therefore barred by the Statute of Limitations.

But the Court of Ordinary had recognized said Walker as executor, and held him out to the world as such; and in the year 1835, (*eleven years before the institution of this suit,*) the said Court received from said Walker a bond conditioned, (among other things,) for the faithful discharge of his duty *as executor* of said estate.

And by the doctrine of relation, (even though there should have been no bond given by Walker, before he sold the negro,) this bond will be held to refer back to that period, and cure the omission, should it be considered in that light, and either perfect the title to Bonner and Garland, or constitute their possession as adverse. 4 *Munford,* 196.  2 *Johns. R.* 510.  3 *Cowen,* 75.  3 *Pr. Wms.* 350.

GIBSON & CAREY, for defendant in error.

*By the Court.*—WARNER, J. delivering the opinion.

The error assigned in this case is to the charge of the Court to the Jury, with regard to the Statute of Limitations, relied on by the defendant. For the plaintiff in error, who was the defendant below, it is insisted, that the records of the Court of Ordinary of Upson County, show *conclusively*, that Daniel Walker, after his intermarriage with the executrix of David T. Milling, was duly qualified as such executor, and that he gave bond and security, as required by the will and the Act of 22d December, 1828, the will of the testator not having effect until his death, which occurred subsequent to the passage of that Act; and also, as it appears from the same record, that Thomas D. Milling, one of the executors named in the will, was qualified on the 9th February, 1846, then being, as the record recites, twenty-one years old; that he must have been seventeen years of age more than four years anterior to the commencement of the present suit, and could, as such executor, have instituted an action for the recovery of the negro; that the estate of David T. Milling, the testator, was represented, either by Walker, who intermarried with the executrix, or by Thomas D. Milling, more than four years before the commencement of the present action. For the defendant in error, it is insisted that, by the terms of the will, and the provisions of the Act of 1828, which operated upon the will, as it did not take effect until after the passage of that Act, the letters testamentary granted to the widow and executrix of the testator, abated, and that there was no legal representative of the estate of David T. Milling, against whom the Statute of Limitations could run, until the appointment of Cary, as administrator, with the will annexed; and from that time to the commencement of the suit, four years had not elapsed. In *Doe ex dem. Conyers vs. Kennon*, (1 *Kelly*, 379,) this Court held, that the Statute of Limitations did not commence to run until administration had been granted on the estate of the intestate. *Doe ex dem. Cofer vs. Flanagan*, (1 *Kelly*, 538,) to the same point.

David T. Milling, the testator, died, and his widow qualified as executrix, subsequent to the passage of the Act of 1828. The

Garland *vs.* Milling.

second section of that Act declares, " If any widow or *feme sole,* after obtaining letters testamentary of administration, or of guardianship, shall marry, the letters so granted shall abate, during the coverture ; but the husband may be entitled to such letters, upon his giving bond and security, and taking the oath required by law ; or the Court of Ordinary may, in their discretion, grant the same to any other person entitled thereto, according to the laws of this State." *Prince,* 252.

When Walker intermarried with the widow and executrix of the testator, her letters testamentary abated ; and to constitute Walker the representative of the testator's estate, it was necessary for him to give bond and security, and take the oath required by law to execute the will. Did Walker ever take the oath, as required by law, and give bond and security ? The argument for the plaintiff in error is, that the records from the Court of Ordinary afford conclusive evidence that he did, and that he was recognized and treated as executor by that Court. Whether he did qualify and give bond and security, were questions of *fact* for the consideration of the Jury, and we think, were very properly submitted by the Court to them.

[1.] Although the records do show very strong *presumptive* evidence that Walker was the executor, and was recognized as such by the Court of Ordinary of Upson County, and if we had been the Jury instructed to find the facts, we might have been of the opinion that bond and security had been given, which had been lost or mislaid ; and if the Jury in this case, under the charge of the Court, had found by their verdict, that Walker had been duly qualified as executor, and given bond and security, we should have been entirely satisfied with their verdict, and felt no inclination to disturb it, as being against evidence ; but it was the exclusive province of the Jury to find the truth of the facts submitted to them by the Court, according to their judgment and view of the evidence ; and having so found, we will not disturb their verdict, although we might have been equally as well satisfied with it, had they found in favor of the defendant in the Court below. The Court violated no principle of law, in submitting the *facts* to the consideration of the Jury.

[2.] Did the Statute run against Thomas D. Milling, on his arrival at the age of seventeen years, and before his qualification as executor ? The argument for the plaintiff in error is, that it did, be-

Garland *vs.* Milling.

cause he could have instituted suit before probate of the will. It is true that an executor can do many things before probate of the will by the Common Law, for the *benefit* of the estate. He may *commence* actions in right of the testator, but he cannot *declare,* before probate of the will, for the reason to enable him to assert his claim, in right of his testator, in a Court of Justice, he must produce a certified copy of the will, under the seal of the Probate Court, or the letters testamentary. *Toller's Ex'rs,* 46.

Under our practice, an executor might, we think, institute an action before probate of the will, for the protection of the estate, provided the will is admitted to probate, by the first term of the Court to which the suit is brought, so as to enable him to make *profert* of his letters testamentary, at that Court; and when profert thereof shall be so made, such letters testamentary will have relation back to the time of suing out the writ. *Toller,* 47. But while we admit an executor *may* institute a suit for the *protection* of the estate of his testator, we are not willing to hold that he *must* do so, or his right of action be *barred* by the Statute of Limitations until probate of the will, and the qualification of the executor.

By the 5th section of the Act of 1792, every executor or administrator, with the will annexed, *at the time* of proving the will or granting administration, shall take an oath to well and truly execute the same. *Prince,* 227. In our judgment, the safest and best rule to adopt and establish, in relation to the time when the estate of the testator shall be considered as represented, so as to allow the Statute of Limitations to commence running against it, is from the time of the probate of the will and the *qualification* of the executor or administrator. When the executor qualifies to execute the will, it is an acceptance of the trust devolved upon him by the testator, and he is then clothed with official authority to represent the same, and the Statute will commence to run, from the time of such qualification.

Let the judgment of the Court below be affirmed.